UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

IGNACIO ROSARIO SILVESTRE,

      Plaintiff,

      v.

JOE NOFFSINGER, an individual;
JASON MOSER, an individual; KELLY
McLEOD, an individual, CITY
OF FOREST GROVE, a municipal
corporation; CITY OF CORNELIUS, a
municipal corporation; and WASHINGTON
COUNTY, a political subdivision of the
State of Oregon,

      Defendants.

Civil No. 09-425-HA

OPINION AND ORDER

HAGGERTY, District Judge:

      Plaintiff brings this action alleging excessive force and battery. Pending before the court are: a summary judgment motion [50] from defendants Washington County and Kelly McLeod (the County defendants); and a similar summary judgment motion [41] from defendants Joe Noffsinger, Jason Moser, City of Forest Grove, and City of Cornelius (the City defendants). For the following reasons, both motions [41, 50] are granted in part and denied in part.

1 -- OPINION AND ORDER

**BACKGROUND**

The following factual summary is stated in a light most favorable to plaintiff unless otherwise indicated. On June 21, 2007, police received an emergency call and were dispatched to 431 North 14th Avenue in Cornelius, Oregon for suspicion of drunk driving. This area receives many emergency calls for misconduct, and is considered an anti-police neighborhood.

The emergency caller identified the suspect as Enrique Moreno Santillan (Moreno). When Sergeant Joe Noffsinger (Noffsinger) arrived, the caller identified Moreno to him. Noffsinger tried to apprehend Moreno, and Moreno resisted. Noffsinger then radioed for police support.

Officer Douglas Shuetz arrived and assisted Sergeant Noffsinger in controlling Moreno. Deputy Kelly McLeod (McLeod) arrived shortly thereafter. After a struggle that compelled McLeod and Officer Shuetz to deploy tasers on Moreno, the officers got Moreno onto the ground.

By this time, a large crowd had assembled. Individuals from the crowd declared: "We're videotaping this" and "We're watching you."

Officers then heard plaintiff cry from a distance: "That's my son. That's my son." Plaintiff weighs 230 pounds and is five feet, five inches tall. He approached the scene from the north.

Plaintiff advanced because he "saw [Moreno] screaming, yelling out in pain, and he was being – he was receiving electrical shocks" and plaintiff wanted "[m]ore than anything else, for them to stop hitting [Moreno] or to [stop] using the taser on him." Decl. of Gerald L. Warren, Ex. 1 at 14, 20. At the time of the incident, Moreno was dating plaintiff's daughter and living in plaintiff's home.

2 -- OPINION AND ORDER

Defendants contend that as plaintiff approached, the officers ordered plaintiff to "stay back," "sit down," and "stop."  Plaintiff disputes that he was ordered to stop.

Plaintiff slowed and came to a stop approximately one half block from the arrest scene.  The officers approached plaintiff.  They told plaintiff to "get down."  The officers then pointed their tasers at plaintiff.  Plaintiff crouched to one knee, but did not drop fully to the ground.

The officers then attempted to restrain plaintiff.  Defendants allege that plaintiff struggled.  Plaintiff alleges that he did not resist, and that he was given insufficient time to comply with the officers' commands.  Officer Shuetz and McLeod both fired tasers at plaintiff's back.  Plaintiff was then handcuffed.  He asserts that he suffered a bruised thumb and scars on his back as a result of the incident.

## **STANDARDS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Defendant, the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set

forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-49.

## DISCUSSION

### 1. Qualified Immunity

Defendants seek summary judgment because they contend that they are entitled to qualified immunity for their actions. Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 US 800, 818 (1982). Defendants are entitled to qualified immunity where they "reasonably could have believed that their conduct was lawful 'in light of clearly established law and the information that they possessed.'" *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 973 (9th Cir. 1996) (quoting *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989)). When analyzing an assertion of qualified immunity, the court must look at the particular facts of the case and the particular rights invoked. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If the contours of the right are not sufficiently clear, the officials are entitled to qualified immunity. *Id*. However, an official action is not protected by qualified immunity simply because "the very action in question" has not previously been held unlawful. *Id*. (citations omitted).

A plaintiff's excessive use of force claim under 42 U.S.C. § 1983 is analyzed under the Fourth Amendment's protections against unreasonable searches and seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The reasonableness analysis balances the nature and quality of the intrusion on the individual's constitutional rights against the important government interests alleged to justify the intrusion. *Scott v. Harris*, 550 U.S. 372, 383 (2007).

4 -- OPINION AND ORDER

The reasonableness of an officer's use of force is a highly fact-specific inquiry. *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010). Reasonableness must be judged in light of information known to the officer at the time, and with careful attention to the facts and circumstances of the particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Objective factors must justify the officer's concern for safety, not simply the officer's subjective statement. *Bryan v. MacPherson*, 608 F.3d 614, 622 (9th Cir. 2010). If, based on the totality of the circumstances, the officer reasonably believed that the level of force used was lawful and reasonably necessary, then qualified immunity will shield the officer from liability. *Id.* at 628.

At the outset, plaintiff's overbroad argument that summary judgment is inappropriate as a matter of law for excessive force claims is rejected. This court is empowered to consider qualified immunity and resolve claims to which qualified immunity applies as a matter of law.

Defendants argue that the officers reasonably believed that their actions were lawful because no Ninth Circuit or Supreme Court case law has clearly established the limits of their use of tasers. *See Mattos v. Agarano*, 590 F.3d 1082, 1089-90 (9th Cir. 2010) (noting that before 2006, neither the Ninth Circuit nor the Supreme Court had decided an excessive force case involving the use of a taser).

However, showing that a right is clearly established does not necessarily require a case with closely analogous facts. *Bryan*, 608 F.3d at 629. According to the factors laid out in *Graham*, the officers must be construed to have been on notice that the use of force on an unarmed, not immediately dangerous, non-fleeing suspect who committed a non-violent crime would likely be excessive.

5 -- OPINION AND ORDER

Plaintiff's purported crime, resisting or obstructing an arrest, is a class A misdemeanor, which – under proper circumstances – can necessitate the use of some force. *See* O.R.S. 162.315; *State v. Hasan*, 760 P.2d 1377, 1380 (Or. Ct. App. 1988). To justify the use of a generally non-lethal force (such as a taser), the suspect must pose an immediate threat to the officer or members of the public; it is insufficient that the force was used merely to quickly resolve a potentially dangerous situation. *Bryan*, 608 F.3d at 623.

Here, it is undisputed that plaintiff was unarmed and that he stopped short of the arrest scene before the officers tased him. The court finds no factual basis for concluding that plaintiff intended to flee. Although the parties dispute whether a safety risk existed, and the extent to which plaintiff may have resisted or failed to comply with the officers' instructions, when viewed most favorably to plaintiff, the asserted facts preclude summary judgment.

Defendants contend that the decision in *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001) is instructive. In *Jackson*, officers responded to a report about alcohol consumption at a public park where the plaintiff and over thirty of her family members had gathered. 268 F.3d at 649. When the officers arrived, they recognized the plaintiff's son and ascertained that there was an outstanding warrant for him. *Id.*

The officers informed the plaintiff's son of his warrant, and he directed the officers to speak with his mother, the plaintiff. *Id.* The plaintiff then argued with the officers about the warrant while her son tried to flee. *Id.*

The plaintiff and other family members escalated the argument with officers until a fight broke out. *Id.* When additional officers arrived, a fight ensued between the plaintiff's niece and a female officer. *Id.* at 650. The plaintiff interceded in that fight and was sprayed with a chemical irritant after receiving a warning. *Id.* The plaintiff was then pushed to the ground and

handcuffed. *Id.* Allegedly, officers detained the plaintiff in a sealed automobile in high temperatures to "adjust" her attitude. *Id*. The court concluded that the alleged intrusions into the plaintiff's constitutional rights were minimal. *Id*. at 652. Moreover, the plaintiff's "active interference posed an immediate threat to the officers' personal safety and [their] ability to control the group." *Id*. at 653. The court concluded that the force used in these circumstances was not excessive, and that summary judgment was appropriately granted to the officers. *Id*.

The facts presented here are similar to the extent that there are allegations that a party was interfering with an arrest. However, the risk posed to the officers in *Jackson* – when viewing the alleged facts favorably to plaintiff – appear to have been much greater than the possible threat to officer safety here.

In *Jackson*, the court considered factors including that the plaintiff was sprayed only in her hair, the threatened officers were substantially outnumbered, the bystanders refused to obey the officers' instructions, and a number of individuals began verbally and physically threatening officers. *Id.* at 652-53. Here, plaintiff was tased at least twice in his back, appears to have been farther from the bystanders than the plaintiff in *Jackson* was, had halted and was trying to drop to the ground in compliance with the officers' directives when force was inflicted. Moreover, the bystanders were less hostile than those in *Jackson*.

Defendants also emphasize that the tasers were in drive-stun mode when deployed. Washington County Defs.' Mem. at 10. The Ninth Circuit recently characterized drive-stun tasers as "painful, certainly, but also temporary and localized." *Brooks v. City of Seattle*, 599 F.3d 1018, 1027 (9th Cir. 2010). Notwithstanding the holding by the *Brooks'* court' that the level of force from the drive-stun taser was not excessive under the circumstances presented in that

7 -- OPINION AND ORDER

case, the court also noted that deploying a taser in drive-stun mode could be excessive under other circumstances. *Id.* at 1028 n.15.

Most significantly, the alleged threat (if any) posed by plaintiff also raises a question of fact. This issue is given great weight. *See Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (explaining that the "most important single element" of the *Graham* factors is whether the suspect poses an immediate threat to the safety of the officers or others).

Defendants contend that plaintiff intended to obstruct Moreno's arrest and refused to comply with the officers' instructions. Plaintiff asserts that he fully complied. A suspect's repeated failure to comply with an officer's instructions can escalate the level of risk to the officer's safety and justify the use of force. *Brooks*, 599 F.3d at 1028-30 (noting that multiple applications of a taser can be justified if the suspect refuses to comply after the first application of force); *see also Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 921-22 (9th Cir. 2001) (holding that an officer's use of force was reasonable where the suspect refused to surrender her purse and tried to escape when she was being handcuffed).

In this instance, factual issues exist regarding whether plaintiff understood the officers' directions, tried to comply, and understood that he was threatened with being tased for failing to comply. This court concludes that material issues of fact exist regarding the amount of force used on plaintiff, and the propriety of that force. Accordingly, defendants' request for summary judgment based upon the invocation of qualified immunity is rejected.

### 2. *Monell* claims

A municipality may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury. . . ."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000).

A supervisor may be held liable under § 1983 if he or she was personally involved in the plaintiff's constitutional deprivation, or if a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.  *Jackson*, 268 F.3d at 653 (citations omitted).

> A plaintiff may impose § 1983 liability against a municipality in one of three ways:
>
> (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citation and internal quotation marks omitted).

An unconstitutional policy or custom need not be carried out by the municipality's official lawmakers to subject the municipality to liability.  Liability may lie against a municipality for conduct by those "whose acts or edicts may fairly be said to represent official policy."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (quoting *Monell*, 436 U.S. at 694).  However, municipal liability only attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.  *Id*. at 484.

Defendants contend that even if the court concludes that there is an issue of fact regarding whether a constitutional violation occurred, there is no basis for a *Monell* claim because plaintiff cannot show a sufficiently persistent, widespread, permanent and well-settled

municipal policy at play here. County Dft. Reply at 10 (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (other citations and quotations omitted). A single failure to discipline officers by itself does not give rise to *Monell* liability. *Id*. at 11 (citing *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003)).

Put differently, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. att 691 (emphasis in original). Plaintiff bears the burden to show a policy or custom on the part of the municipalities that gave rise to the infliction of constitutional violations, which can be proven by the municipality's negligence in training or failure to respond to constitutional violations. *Gilette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir.1992).

Under circumstances in which a plaintiff cannot show evidence of a direct policy or a widespread custom that gave rise to a constitutional violation, a plaintiff may nevertheless "attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gilette*, 979 F.2d at 1349 (citing *McRae v. Shimoda*, 795 F.2d 780, 84 (9th Cir. 1986).

Showing a custom through deliberate indifference requires a plaintiff to establish: (1) that he or she possessed a constitutional right, which was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quotations and citations omitted).

After construing the facts in a light favorable to plaintiff – including the conclusion for the purposes of this analysis that the alleged excessive force inflicted by the officers amounted to a constitutional violation – plaintiff fails to establish a material issue of fact regarding the

10 -- OPINION AND ORDER

existence of a municipal policy or custom (explicit or otherwise) that the municipalities promulgated or to which they were indifferent.

Plaintiff asserts that material issues of fact exist regarding municipal liability regarding whether municipal officials "took any steps to reprimand or discharge their subordinates," or acknowledged that these subordinates erred in their conduct. Pl.'s Resp. at 7. Plaintiff alleges that the defendants never filed an "excessive force report," the officers involved in the incident were not reprimanded and are still currently employed, and McLeod's supervisors ratified her conduct. *Id.*

These allegations amount to insufficient evidence to raise an issue of fact regarding whether the alleged constitutional violations plaintiff suffered were the result of official policy. Plaintiff relies upon reasoning expressed recently by the Ninth Circuit in concluding that under some circumstances, evidence of officials placing pressure on subordinates may create a triable question regarding *Monell* claims. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1025 (9th Cir. 2008). The circumstances presented in *Harper* included extensive evidence that established ratification, including evidence of telephone calls placed by the Chief of Police pressuring the District Attorney, compelling the court to conclude that a reasonable jury might have found that official policies gave rise to constitutional violations. *Id*.

Plaintiff presents no similar evidence here. No evidence is presented that raises an issue of material fact regarding the existence of a longstanding custom that amounts to standard practices of Washington County, the City of Forest Grove, or the City of Cornelius, and there is no evidence that an official with final policymaking authority in these municipalities either delegated that authority to, or ratified the decision of, a subordinate. Accordingly, defendants

11 -- OPINION AND ORDER

Washington County and the Cities of Forest Grove and Cornelius are entitled to summary judgment.

### 3.     City Defendants' Motion to Strike

City defendants also advance a Motion to Strike Deposition Testimony Offered by Plaintiff [82]. This motion addresses evidence that could be construed as supporting plaintiff's *Monell* claims against the City of Cornelius. City Dft. Mem. Supp. at 2.

Specifically, plaintiff has presented testimony from neighbor Stephen Graham regarding his encounters with Cornelius police officers. Declar. of Robert L. Sepp, Ex. D. Graham describes "getting a ticket years ago" from Cornelius officers, having "many run-ins with them," being "pulled over and arrested by Officer Calvert many times," and being "profiled," harassed and threatened. *Id*. However, Graham also testified that he has enjoyed "a great relationship" with other Cornelius officers, and has had "no problems with the police in Cornelius," but only suffered harassment from Officer Calvert and one other officer. *Id*.

City defendants move to strike, arguing that this testimony should be stricken as irrelevant. Counsel describes the testimony as "mere anecdotes." Dft. Mem. Supp. at 2.

The motion to strike is denied. The evidence – although equivocal on the question of whether *Monell* claims should survive summary judgment – cannot be disregarded as wholly irrelevant. Graham's testimony was considered in this ruling's analysis. His experience and observations fail to establish that a question of fact exists regarding the viability of *Monell* claims against Cornelius or its officials.

### 4.     Battery claim

Because this court finds that material issues of fact exist regarding the reasonableness of the officers' conduct in arresting plaintiff, plaintiff's battery claim remains. *See Ballard v. City of*

12 -- OPINION AND ORDER

*Albany*, 191 P.3d 679, 686 (Or. Ct. App. 2008) (holding that excessive force during an arrest can give rise to battery claim). Accordingly, the claims of battery are not yet ripe for resolution as a matter of law.

## **CONCLUSION**

For the reasons provided, both Motions for Summary Judgment [41] and [50] are granted in part and denied in part. City defendants' Motion to Strike Deposition Testimony Offered by Plaintiff [82] is denied.

IT IS SO ORDERED.

DATED this   29   day of September, 2010.

                                                  /s/ Ancer L. Haggerty   
                                                  Ancer L. Haggerty  
                                      United States District Judge